E-FILED
Friday, 18 March, 2005  11:22:06 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| AMERICAN STATES INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CURRY ICE & COAL, INC.; DEARBORN )<br>CONSTRUCTION, INC., an Idaho corporation; )<br>PERRY BROUGHTON TRUCKING & )<br>EXCAVATING, INC., a Delaware corporation )<br>ARCHER DANIELS MIDLAND COMPANY; )<br>and AMERICAN STORES PROPERTIES, INC., )<br>a Delaware corporation, )<br>)<br>Defendants. ) | No.: 04-3276 |

## LIST OF EXHIBITS

**Exhibit 1 – Third-Party Complaint Lawsuit**

**Exhibit 2 – Copy of American States' Insurance Policy**

**Exhibit 3 – Subpoena Duces Tecum to CURRY**

**Exhibit 4 – CURRY's Response to Subpoena**

**Exhibit 5 – Letter dated June 2, 2004**

**Exhibit 6 – Letter dated December 8, 2004**

00300177.DOC

IN THE CIRCUIT COURT
SEVENTH JUDICIAL CIRCUIT
SANGAMON COUNTY, ILLINOIS

| | |
|---|---|
| AMERICAN STORES PROPERTIES, INC., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 2002-L-0147 ) |
| DEARBORN CONSTRUCTION, INC., an Idaho corporation and PERRY BROUGHTON TRUCKING & EXCAVATING, INC., a Delaware corporation, | ) ) ) ) ) ) |
| Defendants. | ) ) |
| PERRY BROUGHTON TRUCKING & EXCAVATING, INC. and DEARBORN CONSTRUCTION, INC., | ) ) ) ) |
| Third Party Plaintiffs, | ) ) |
| vs. | ) ) |
| ARCHER-DANIELS-MIDLAND COMPANY, CURRY ICE & COAL, INC., and MIDWEST ENGINEERING SERVICES, INC., | ) ) ) ) ) |
| Third Party Defendants. | ) |

**FILED**

JUL 27 2004    CTR.-1

*[signature]* Clerk of the Circuit Court

### PERRY BROUGHTON TRUCKING & EXCAVATING, INC.'S THIRD PARTY COMPLAINT AGAINST ARCHER-DANIELS-MIDLAND COMPANY AND CURRY ICE & COAL, INC.

#### COUNT I -- ARCHER-DANIELS-MIDLAND COMPANY

Comes now defendant/third party plaintiff, PERRY BROUGHTON TRUCKING & EXCAVATING, INC., by its attorneys, Knapp, Ohl & Green, and for Count I of its Third Party Complaint against Archer-Daniels-Midland Company, states as follows:

1


EXHIBIT 1

1. The plaintiff in the above-entitled cause seeks recovery against defendant/third party plaintiff, Perry Broughton Trucking & Excavating, Inc., under the tort theory of negligence.

2. In its Second Amended Complaint, the plaintiff alleges, among other things, that its building suffers from construction defects and deficiencies as the result of fly ash that was not of good quality. A copy of the Second Amended Complaint is attached hereto as Exhibit A.

3. Perry Broughton Trucking & Excavating, Inc. denies the allegations against it contained in plaintiff's Second Amended Complaint.

4. Archer-Daniels-Midland Company supplied the ash used during the construction of plaintiff's building that is the subject of this suit.

5. Plaintiff's damages were caused as a direct and proximate result of the negligent acts and/or omissions of Archer-Daniels-Midland Company in failing to supply ash of good quality and failing to supply the type of ash ordered by Perry Broughton Trucking & Excavating, Inc.

6. If Perry Broughton Trucking & Excavating, Inc. should be found liable to the plaintiff for damages arising out of the accident alleged in plaintiff's Second Amended Complaint, which liability Perry Broughton Trucking & Excavating, Inc. denies, then Archer-Daniels-Midland Company should be found liable for its entire pro rata share of damages to be determined in accordance with its relative liability pursuant to the provisions of the Illinois Contribution Act.

WHEREFORE, the defendant/third party plaintiff, Perry Broughton Trucking & Excavating, Inc., prays for contribution from third party defendant, Archer-Daniels-

Midland Company, in an amount commensurate with Archer-Daniels-Midland Company's full pro rata share of liability and for any further relief the Court deems just and proper.

**DEFENDANT/THIRD PARTY PLAINTIFF DEMANDS TRIAL BY JURY.**

**COUNT II – CURRY ICE & COAL, INC.**

Comes now defendant/third party plaintiff, PERRY BROUGHTON TRUCKING & EXCAVATING, INC., by its attorneys, Knapp, Ohl & Green, and for Count II of its Third Party Complaint against Curry Ice & Coal, Inc., states as follows:

1. The plaintiff in the above-entitled cause seeks recovery against defendant/third party plaintiff, Perry Broughton Trucking & Excavating, Inc., under the tort theory of negligence.

2. In its Second Amended Complaint, the plaintiff alleges, among other things, that its building suffers from construction defects and deficiencies as the result of fly ash that was not of good quality. A copy of the Second Amended Complaint is attached hereto as Exhibit A.

3. Perry Broughton Trucking & Excavating, Inc. denies the allegations against it contained in plaintiff's Second Amended Complaint.

4. Curry Ice & Coal, Inc. delivered the ash used during the construction of plaintiff's building that is the subject of this suit.

5. Plaintiff's damages were caused as a direct and proximate result of the negligent acts and/or omissions of Curry Ice & Coal, Inc. in failing to obtain from Archer-Daniels-Midland Company the type of ash ordered by Perry Broughton Trucking & Excavating, Inc.

3

6. If Perry Broughton Trucking & Excavating, Inc. should be found liable to the plaintiff for damages arising out of the accident alleged in plaintiff's Second Amended Complaint, which liability Perry Broughton Trucking & Excavating, Inc. denies, then Curry Ice & Coal, Inc. should be found liable for its entire pro rata share of damages to be determined in accordance with its relative liability pursuant to the provisions of the Illinois Contribution Act.

WHEREFORE, the defendant/third party plaintiff, Perry Broughton Trucking & Excavating, Inc., prays for contribution from third party defendant, Curry Ice & Coal, Inc., in an amount commensurate with Curry Ice & Coal, Inc.'s full pro rata share of liability and for any further relief the Court deems just and proper.

**DEFENDANT/THIRD PARTY PLAINTIFF DEMANDS TRIAL BY JURY.**

KNAPP, OHL & GREEN

By: _____
WILLIAM J. KNAPP, #06191199
ELIZABETH A. BRADLEY, #06242905
22 Ginger Creek Parkway
P.O. Box 760
Glen Carbon, IL 62034
(618) 656-5088
(618) 656-5466 FAX

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause by enclosing the same in an envelope addressed to such attorneys at their business address as disclosed by the pleading of record herein, with postage fully prepaid and by depositing said envelope in a U.S. Post Office Mail Box in Glen Carbon, Illinois on the ____ day of _____.

_____

4

IN THE CIRCUIT COURT OF SEVENTH JUDICIAL CIRCUIT
SANGAMON COUNTY, ILLINOIS

AMERICAN STORES PROPERTIES, INC., a )
Delaware corporation, )
)
        Plaintiff, )
)
vs. )
) No. 2002-L-0147
DEARBORN CONSTRUCTION, INC., an )
Idaho corporation, and PERRY BROUGHTEN ) Judge Graves
TRUCKING & EXCAVATING, INC., a )
Delaware corporation, ) Plaintiff Demands Trial by Jury in
) Respect to All Issues Herein
        Defendants. )
)

## SECOND AMENDED COMPLAINT

NOW COMES Plaintiff AMERICAN STORES PROPERTIES, INC., a Delaware corporation, by and through its attorneys Jones, Waldo, Holbrook & McDonough, P.C. and Menges & Molzahn, L.L.C., and as and for its Second Amended Complaint against Defendants DEARBORN CONSTRUCTION, INC., an Idaho corporation, and PERRY BROUGHTEN TRUCKING & EXCAVATING, INC., states as follows:

## GENERAL ALLEGATIONS

1. Plaintiff, American Stores Properties, Inc. ("ASPI"), is a Delaware corporation with its principal place of business in Boise, Idaho.

2. Defendant, Dearborn Construction, Inc. ("DCI"), is an Idaho corporation which is doing business in Springfield, Sangamon County, Illinois.

3. Defendant, Perry Broughten Trucking & Excavating, Inc. ("Broughten"), is a Delaware corporation which is doing business in Springfield, Sangamon County, Illinois.



Doc:268175_1    —1—

4.  ASPI is the owner of Osco Drug Store No. 5310, 2309 South MacArthur Blvd., Springfield, Illinois (the "Store").

5.  During the planning and entitlements process for the construction of the Store, Midwest Engineering Services, Inc. ("Midwest") performed a geotechnical investigation of the Store site and issued a report entitled *Subsurface Exploration and Foundation Recommendation, Proposed Osco Retail Drug Store, MacArthur Boulevard and Outer Park Road, Springfield, Illinois,* dated July 17, 1997 (the "Soils Report"). The Soils Report contains earthwork and foundation observations and recommendations for design and construction of the Store, including the following observations and recommendations:

   a.  that the silty deposits native to the site had natural moisture content near their liquid limits, making them sensitive to disturbance during construction;

   b.  that prior to the placement and compaction of structural fill, the subgrade should be proofrolled to detect areas of unstable yielding soils, and that yielding soils should be either (i) scarified, dried and recompacted, or (ii) removed and replaced with acceptable soils;

   c.  that fill and backfill material used for structural support be either granular or low plasticity, cohesive soils, which can be categorized as GW, GP, SW, SP, GC, SC, GM, SM, CL or ML under the Unified Classification System; and

   d.  that subgrade evaluation, selection of the proper method to stabilize yielding subgrade soils and selection of fill materials should be done in consultation with the soils engineer.

6.  ASPI contracted with Gould, Evans, Goodman Associates, L.C. ("Gould") to prepare construction plans and specifications for the Store. On or about August 18, 1997, Gould issued a Project

Manual containing written specifications for the Store (the "Specifications"). The Project Manual also incorporated the Soils Report as a Contract Document for construction.

7. The Specifications provide in Section 02200, Earthwork, that only satisfactory soils within classification groups GW, GP, GM, SW, SP and SM without deleterious matter may be used as structural fill for construction of the Store. The Specifications prohibit the use of soils within classifications groups GC, SC, ML, MH, CL, CH, OL, OH and PT as structural fill.

8. On or about March 19, 1998, ASPI contracted with DCI to construct the Store in accordance with the construction plans and the Specifications for the Store (the "DCI Contract"), a copy of which is attached hereto as *Exhibit A*.

9. On or about March 19, 1998, DCI contracted with Broughten to provide site grading and earthwork work for the Store in accordance with the construction plans and the Specifications for the Store (the "Broughten Subcontract"), a copy of which is attached hereto as *Exhibit B*.

10. On or about May 6, 1998, DCI issued a Change Order to Broughten to import fly ash to the site for use as structural fill. Broughten procured power plant byproduct fly ash from Archer-Daniels-Midland Corporation and imported to the site power plant byproduct fly ash containing scrubber sludge for use as structural fill.

11. During construction of the Store, DCI and/or Broughten mixed power plant byproduct fly ash containing scrubber sludge with sand and placed this material as structural fill below the interior floor slabs of the Store. The fly ash was apparently used to dry out wet and yielding subgrade soils.

Doc:263178_1

—3—

12. DCI and/or Broughten mixed power plant byproduct fly ash containing scrubber sludge with sand and placed this material as structural fill below the interior floor slabs of the Store without a signed Change Order to the DCI Contract or any other written authorization from ASPI.

13. That after construction of the Store was completed, ASPI sustained damages for property damage caused by a number of occurrences involving the heaving of the interior floor slabs with differential movement across the floor slabs as much as five inches which caused the cracking of floor slabs, the cracking of interior partitions, the cracking of exterior wall panels and which caused other damage to the Store.

14. The heaving of interior floor slabs of the Store was caused by the expansive properties in the presence of moisture of the fly ash which was used as structural fill.

15. That as a consequence of the property damage described above caused by the aforementioned occurrences involving the heaving of interior floor slabs, ASPI will be required to repair the floor slabs (including the possible removal and replacement of the floor slabs and unsuitable fill) and to repair the cracked interior partitions, the cracked exterior wall panels and other damages sustained by the Store. Further, as a consequence of the aforesaid repair activities, retail operations at the Store will be disrupted during the repair work, causing a loss of sales, revenues and profits.

16. On February 21, 2002, DCI filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Idaho (Boise). On May 6, 2002, the bankruptcy case was converted to a Chapter 7 case.

17. On May 24, 2002, ASPI filed a Motion for Relief From Automatic Stay to allow it to pursue an action in Illinois against DCI.

18. On June 3, 2002, the Honorable Terry L. Myers, United States Bankruptcy Judge executed an Order Granting Relief From Automatic Stay. A copy of said Order is attached hereto as *Exhibit C*.

## COUNT I (BREACH OF CONTRACT - DCI)

1-18. As and for paragraphs 1 through 18 of Count I, Plaintiff restates and realleges paragraphs 1 through 18 above.

19. DCI materially breached the DCI Contract by its actions and conduct, including without limitation:

    a. failing to construct the Store in accordance with the construction plans and the Specifications or in accordance with all recognized industry and trade customs and standards;

    b. failing to consult with Midwest and/or ASPI regarding the approval and use of fly ash as structural fill below the floor slabs of the Store;

    c. failing to test the fly ash for its expansive properties prior to the approval and use of the fly ash as structural fill below the floor slabs of the Store;

    d. failing to obtain written approval from ASPI for the use of the fly ash as structural fill below the floor slabs of the Store;

    e. allowing its subcontractor(s) to use the fly ash as structural fill below the floor slabs of the Store without the approval of ASPI in writing or otherwise; and

    f. supplying defective fly ash with expansive properties to stabilize soft and yielding soils.

20. The Store suffers from numerous construction defects and deficiencies as a result of the use of fly ash with expansive properties as structural fill below the floor slabs of the Store including, but not

limited to, the heaving of the interior floor slabs. This heaving has resulted in differential movement across the floor slabs of as much as five inches which has cracked the floor slabs, cracked interior partitions and exterior wall panels, and caused other damages to the Store.

21. As a direct and proximate result of DCI's breaches of the DCI Contract, ASPI has and will suffer damages in an amount presently unknown, but which is expected to exceed $1,000,000.

WHEREFORE, Plaintiff, AMERICAN STORES PROPERTIES, INC., prays for a judgment in its favor against Defendant, DEARBORN CONSTRUCTION, INC., in an amount to be proven at trial, but not less than $1,000,000, together with prejudgment interest, costs and attorneys' fees incurred in bringing this action, and for such other and further relief as the Court may deem just and equitable.

### COUNT II (NEGLIGENCE - DCI)

1-21. As and for paragraphs 1 through 21 of Count II, Plaintiff restates and realleges paragraphs 1 through 21 above.

22. DCI owed a duty to ASPI to exercise the degree of skill and care ordinarily exercised by licensed contractors in the construction of the Store and/or in the supervision of its subcontractors retained to construct the Store.

23. DCI breached its duties to ASPI and acted negligently in the construction of the Store. By reason of such breaches of duties, the Store as constructed is unsafe to persons and property.

24. As a direct and proximate result of such negligence, ASPI has suffered injury and damages in an amount to be proven at trial, but which is expected to exceed $1,000,000.

WHEREFORE, Plaintiff, AMERICAN STORES PROPERTIES, INC., prays for a judgment in its favor against Defendant, DEARBORN CONSTRUCTION, INC., in an amount to be proven at trial, but not less than $1,000,000, together with prejudgment interest, costs and attorneys' fees incurred in bringing this action, and for such other and further relief as the Court may deem just and equitable.

### COUNT III (NEGLIGENT MISREPRESENTATION - DCI)

1-24.  As and for paragraphs 1 through 24 of Count III, Plaintiff restates and realleges paragraphs 1 through 24 above.

25.  DCI, by its certifications, including certifications of completion and applications for payment, has represented to ASPI that the Store has been constructed with workmanship and materials of good quality and in accordance with the construction plans and Specifications in accordance with all recognized industry and trade customs and standards.

26.  Such representations by DCI were made carelessly and negligently, and were in fact not true at the time such representations were made.

27.  DCI had a pecuniary interest in the Store project and was in a superior position to know the material facts concerning the construction of the Store, and should have reasonably foreseen that ASPI would rely on such representations.

28.  ASPI, not knowing such representations to be untrue, reasonably relied upon such representations and has been injured as a direct and proximate result of the carelessness and negligence of DCI.

29.  By reason of such carelessness and negligence, ASPI has been damaged and is entitled to recover from DCI damages in an amount to be proven at trial, but not less than $1,000,000.

WHEREFORE, Plaintiff, AMERICAN STORES PROPERTIES, INC., prays for a judgment in its favor against Defendant, DEARBORN CONSTRUCTION, INC., in an amount to be proven at trial, but not less than $1,000,000, together with prejudgment interest, costs and attorneys' fees incurred in bringing this action, and for such other and further relief as the Court may deem just and equitable.

## COUNT IV (BREACH OF CONTRACT - BROUGHTEN)

1-29. As and for paragraphs 1 through 29 of Count IV, Plaintiff restates and realleges paragraphs 1 through 29 above.

30. Pursuant to paragraph 4.5 of the Broughten Subcontract, Broughten agreed that materials furnished under the Broughten Subcontract would be of good quality and that Broughten's work under the Broughten Subcontract would be free from defects and would conform to the requirements of the Subcontract Documents. Pursuant to paragraph 1 of the Broughten Subcontract, the construction plans and Specifications are defined as Subcontract Documents.

31. ASPI is an intended third party beneficiary of the Broughten Subcontract and entitled to its performance.

32. Broughten breached the Broughten Subcontract in that: (1) the fly ash furnished by Broughten under the Broughten Subcontract is not of good quality; (2) Broughten's work under the Broughten Subcontract is not free from defects; and (3) Broughten's work under the Broughten Subcontract does not conform to the requirements of the Subcontract Documents.

33. The Store suffers from numerous construction defects and deficiencies as a result of the use of fly ash with expansive properties as structural fill below the floor slabs of the Store including, but not limited to, the heaving of the interior floor slabs. This heaving has resulted in differential movement across

the floor slabs of as much as five inches which has cracked the floor slabs, cracked interior partitions and exterior wall panels, and caused other damages to the Store.

34. As a direct and proximate result of Broughten's breaches of the Broughten Subcontract, ASPI has and will suffer damages in an amount presently unknown, but which is expected to exceed $1,000,000.

WHEREFORE, Plaintiff, AMERICAN STORES PROPERTIES, INC., prays for a judgment in its favor against Defendant, PERRY BROUGHTEN TRUCKING & EXCAVATING, INC., in an amount to be proven at trial, but not less than $1,000,000, together with prejudgment interest, costs and attorneys' fees incurred in bringing this action, and for such other and further relief as the Court may deem just and equitable.

### COUNT V (BREACH OF EXPRESS WARRANTY - BROUGHTEN)

1-34. As and for paragraphs 1 through 34 of Count V, Plaintiff restates and realleges paragraphs 1 through 34 above.

35. Pursuant to paragraph 4.5 of the Broughten Subcontract, Broughten expressly warranted to ASPI that materials furnished under the Broughten Subcontract would be of good quality and that Broughten's work under the Broughten Subcontract would be free from defects and would conform to the requirements of the Subcontract Documents. Pursuant to paragraph 1 of the Broughten Subcontract, the construction plans and Specifications are defined as Subcontract Documents.

36. Broughten breached its express warranty to ASPI under the Broughten Subcontract in that: (1) the fly ash furnished by Broughten under the Broughten Subcontract is not of good quality; (2) Broughten's work under the Broughten Subcontract is not free from defects; and (3) Broughten's work under the Broughten Subcontract does not conform to the requirements of the Subcontract Documents.

37. The Store suffers from numerous construction defects and deficiencies as a result of the use of fly ash with expansive properties as structural fill below the floor slabs of the Store including, but not limited to, the heaving of the interior floor slabs. This heaving has resulted in differential movement across the floor slabs of as much as five inches which has cracked the floor slabs, cracked interior partitions and exterior wall panels, and caused other damages to the Store.

38. As a direct and proximate result of Broughten's breaches of its express warranty to ASPI under the Broughten Subcontract, ASPI has and will suffer damages in an amount presently unknown, but which is expected to exceed $1,000,000.

WHEREFORE, Plaintiff, AMERICAN STORES PROPERTIES, INC., prays for a judgment in its favor against Defendant, PERRY BROUGHTEN TRUCKING & EXCAVATING, INC., in an amount to be proven at trial, but not less than $1,000,000, together with prejudgment interest, costs and attorneys' fees incurred in bringing this action, and for such other and further relief as the Court may deem just

## COUNT VI (NEGLIGENCE - BROUGHTEN)

1-38. As and for paragraphs 1 through 38 of Count VI, Plaintiff restates and realleges paragraphs 1 through 38 above.

39. Broughten owed a duty to ASPI to exercise the degree of skill and care ordinarily exercised by licensed contractors in the construction of the Store.

40. Broughten breached its duties to ASPI and acted negligently in the construction of the Store. By reason of such breaches of duties, the Store as constructed is unsafe to persons and property.

41. As a direct and proximate result of such negligence, ASPI has suffered injury and damages in an amount to be proven at trial, but which is expected to exceed $1,000,000.

WHEREFORE, Plaintiff, AMERICAN STORES PROPERTIES, INC., prays for a judgment in its favor against Defendant, PERRY BROUGHTEN TRUCKING & EXCAVATING, INC., in an amount to be proven at trial, but not less than $1,000,000, together with prejudgment interest, costs and attorneys' fees incurred in bringing this action, and for such other and further relief as the Court may deem just and equitable.

Plaintiff Demands Trial by Jury in Respect to All Issues Herein.

AMERICAN STORES PROPERTIES, INC.

By: _____
One of Its Attorneys

CRAIG R. MARIGER
Jones, Waldo, Holbrook & McDonough
170 South Main Street, Suite 1500
Salt Lake City, UT 84101
Telephone: (801) 521-3200
Facsimile: (801) 328-0537

STEVEN P. ROUSE
Menges & Molzahn, L.L.C.
20 North Clark, Suite 2300
Chicago, IL 60602
Telephone: (312) 917-1880
Facsimile: (312) 917-1851

# Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum

## AIA Document A101 - Electronic Format

#5310
(x. 53102

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

The 1997 Edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified. This document has been approved and endorsed by The Associated General Contractors of America.

Copyright 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, copyright 1987 the American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C., 20006-5292. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will be subject to legal prosecution.

AGREEMENT
made as of the Sixteenth day of March in the year of Nineteen Hundred and Ninety-eight

BETWEEN the Owner:
*(Name and address)*
American Stores Properties, Inc.
1955 West North Avenue, Building F
Melrose Park, IL 60160-1181

and the Contractor:
*(Name and address)*
Dearborn Construction, Inc.
16942 Gothard Street, Suite J
Huntington Beach, CA 92647
(714) 842-4486 Office
(714) 842-0026 Fax

The Project is:
*(Name and location)*
Osco # 915
MacArthur and Outer Park
Springfield, IL 62702

The Architect is:
*(Name and address)*
Gould, Evans, Goodman Associates, LC
7201 West 110th Street, Suite #220
Overland Park, KS 66210
(913) 327-1510 Office
(913) 327-1520 Fax

The Owner and Contractor agree as set forth below.

AIA DOCUMENT A101 · OWNER-CONTRACTOR AGREEMENT · TWELFTH EDITION · AIA · COPYRIGHT 1987 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W. WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the di expiration as noted below.

Electronic Format A101

## ARTICLE 1
## THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 9.

## ARTICLE 2
## THE WORK OF THIS CONTRACT

The Contractor shall execute the entire Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as follows:
The general construction work including all labor, material and equipment for Osco # 915 located at MacArthur and Outer Park, Springfield, IL 62702 per the contract documents identified in Article 9 of this document.

## ARTICLE 3
## DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

3.1    The date of commencement is the date from which the Contract Time of Paragraph 3.2 is measured, and shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*
March 25, 1998

Unless the date of commencement is established by a notice to proceed issued by the Owner, the Contractor shall notify the Owner in writing not less than five days before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

3.2    The Contractor shall achieve Substantial Completion of the entire Work not later than
*(Insert the calendar date or number of calendar days after the date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Work, if not stated elsewhere in the Contract Documents.)*
July 24, 1998

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*

## ARTICLE 4
## CONTRACT SUM

4.1    The Owner shall pay the Contractor in current funds for the Contractor's performance of the Contract the Contract Sum of c One Million Three Hundred Eighteen Thousand One Hundred ElevenDollars ($ 1,318,111.00 ), subject to additions and deductions as provided in the Contract Documents.

4.2    The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date until which that amount is valid.)*

4.3    Unit prices, if any, are as follows:

AIA DOCUMENT A101 • OWNER-CONTRACTOR AGREEMENT • TWELFTH EDITION • AIA • COPYRIGHT 1987 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of

MAY-15-2002 WED 03:27 PM    LEGAL DEPT    FAX NO.    1541    P. 04

## ARTICLE 5
## PROGRESS PAYMENTS

5.1    Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

5.2    The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

5.3    Provided an Application for Payment is received by the Architect not later than the First day of a month, the Owner shall make payment to the Contractor not later than the Thirtieth day of the same month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than Twenty-five days after the Architect receives the Application for Payment.

5.4    Each Application for Payment shall be based upon the Schedule of Values submitted by the Contractor in accordance with the Contract Documents. The Schedule of Values shall allocate the entire Contract Sum among the various portions of the Work and be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

5.5    Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

5.6    Subject to the provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

5.6.1.    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the total Contract Sum allocated to that portion of the Work in the Schedule of Values, less retainage of zero percent ( 0 %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute may be included as provided in Subparagraph 7.3.7 of the General Conditions even though the Contract Sum has not yet been adjusted by Change Order;

5.6.2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of zero percent ( 0 %);

5.6.3    Subtract the aggregate of previous payments made by the Owner; and

5.6.4    Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of the General Conditions.

5.7    The progress payment amount determined in accordance with Paragraph 5.6 shall be further modified under the following circumstances:

5.7.1    Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to one hundred percent ( 100 %) of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work and unsettled claims; and

5.7.2    Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Subparagraph 9.10.3 of the General Conditions.

5.8    Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Subparagraphs 5.6.1 and 5.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

AIA DOCUMENT A101 · OWNER-CONTRACTOR AGREEMENT · TWELFTH EDITION · AIA · COPYRIGHT 1987 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of

MAY-08-2002 WED 03:26 PM    TS. LEGAL DEPT    FAX NO.    5431    P. 05

## ARTICLE 6
## FINAL PAYMENT

Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when (1) the Contract has been fully performed by the Contractor except for the Contractor's responsibility to correct nonconforming Work as provided in Subparagraph 12.2.2 of the General Conditions and to satisfy other requirements, if any, which necessarily survive final payment; and (2) a final Certificate for Payment has been issued by the Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

## ARTICLE 7
## MISCELLANEOUS PROVISIONS

7.1    Where reference is made in this Agreement to a provision of the General Conditions or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

7.2    Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may effect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

7.3    Other provisions:

~~In consideration of premises, heretofore and hereafter made by Owner and Contractor, Contractor agrees to indemnify, hold harmless and defend American Drug Stores, American Stores Company, their affiliates and subsidiaries therefrom and against all liability, loss, claim, action, damages, cost or expense of whatsoever nature, including attorney fees and costs of investigation, resulting from claims, demands or suits alleging injury to any person(s) or property damage arising out of the Contractor's performance of its obligation hereunder.~~

## ARTICLE 8
## TERMINATION OR SUSPENSION

8.1    The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of the General Conditions.

8.2    The Work may be suspended by the Owner as provided in Article 14 of the General Conditions.

## ARTICLE 9
## ENUMERATION OF CONTRACT DOCUMENTS

9.1    The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

9.1.1    The Agreement is this executed Standard Form of Agreement Between Owner and Contractor, AIA Document A101, 1987 Edition.

9.1.2    The General Conditions are the General Conditions of the Contract for Construction, AIA Document A201, 1987 Edition.

9.1.3    The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated , and are as follows:
Document                                Title                                Pages

9.1.4    The Specifications are those contained in the Project Manual dated as in Subparagraph 9.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

---

AIA DOCUMENT A101 · OWNER-CONTRACTOR AGREEMENT · TWELFTH EDITION · AIA · COPYRIGHT 1987 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and ... This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of